1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WF CAPITAL, INC.,

                                    Plaintiff,

        v.

WILLIAM J. BARKETT and LISA
BARKETT,

                                    Defendants.

No. C10-524RSL

ORDER DENYING
DEFENDANTS' MOTION TO
DISMISS AND GRANTING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

## I.  INTRODUCTION

        This matter comes before the Court on plaintiff's motion for summary
judgment (Dkt. # 8).  Because the uncontroverted record shows that defendants
defaulted on their loans and because defendants present no viable defense, the Court
GRANTS plaintiff's motion.  Subsequent to the filing of plaintiff's motion, defendants
submitted a motion to dismiss (Dkt. # 14) based on the same erroneous arguments
presented in their opposition to plaintiff's summary judgment motion.  Finding no
merit in these arguments, the Court also DENIES defendants' motion to dismiss.

## II. DISCUSSION

### A. Background

        The following facts are undisputed.  On April 16, 2007, defendant William
Barkett in his capacity as President of Wasco Investments, LLC ("Wasco") signed a
"Fourth Amended & Restated Commercial Promissory Note" to plaintiff WF Capital,

Inc. ("WF Capital") for $9,750,000 plus interest in return for a loan to develop his property in California. Dkt. # 9, Declaration of Patrick J. Burke ("Burke Decl."), Exh. 1. On February 5, 2008, Mr. Barkett signed a similar "First Amended & Restated Promissory Note" for $1,150,000 in his capacity as President of Wasco. Id., Ehx. 3. On September 30, 2008, Mr. Barkett signed another similar "Commercial Promissory Note" for $650,000 in his capacities as President of Wasco and as Manager of Parker Dam Development, LLC ("Parker Dam"). Id., Ehx. 5. Mr. Barkett was the sole signatory on these documents.

On each occasion that he signed a Commercial Promissory Note in his capacity as officer of Wasco and/or Parker Dam, Mr. Barkett also signed a Gauranty in his personal capacity and on behalf of his marital community that provided:

> Guarantor hereby unconditionally, irrevocably, and absolutely
> guarantees without demand by Lender the full and prompt payment
> when due, whether by acceleration or otherwise of: (a) the entire amount
> of principal and accrued interested under the Note, and (b) all
> indebtedness, obligation and liabilities of Borrower under the Loan
> Documents, including, without limitation, all costs of collection,
> attorneys' fees, court costs, and other advances and extensions
> thereunder . . . .

Id., Exhs. 2, 4, 6 at ¶ 1. Defendant Lisa Barkett additionally signed the third Guaranty, dated September 30, 2008.

After defendants and the entities that nominally received the loans did not make the scheduled payments pursuant to the terms of the Commercial Promissory Notes, the parties agreed to a new payment schedule by entering into an additional "Forbearance Agreement" on September 18, 2009. Id., Exh. 8. Defendants failed to make timely payments under the new payment schedule and plaintiff now sues for judgment on the Guaranties. Defendants argue that the agreements are unenforceable because they are void under California law.

**B. Motion for Summary Judgment**

Summary judgment is appropriate only "if the pleadings, the discovery and

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 2

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor," Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995), or where there is a "complete failure of proof concerning an essential element of the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. U.S. v. Johnson Controls, Inc., 457 F.3d 1009, 1013 (9th Cir. 2006). However, "the mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Triton, 68 F.3d at 1221.

This is a simple matter of contract law. Though defendants make creative arguments in an attempt to avoid their duties under the agreements, the documents speak for themselves. There is no factual dispute that plaintiff disbursed nearly $12 million in loans to entities controlled by defendants, that the defendants personally guaranteed those loans, or that defendants have not repaid those loans according to the terms of either the original payment schedule or the superseding Forbearance Agreement.

## 1. Choice of Law

A federal district court sitting in diversity applies "the forum state's choice of law rules to determine the controlling substantive law." Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002). The three Commercial Promissory Notes at issue, the corresponding Guaranties, and the Forbearance Agreement—each of which was signed by either Mr. Barkett alone or Mr. and Mrs. Barkett together—contain express provisions choosing Washington law to determine their validity and construction. Burke Decl., Exhs. 1, 3, 5 at ¶¶ 8 and 15(d), Exhs. 2, 4, 6 at ¶ 13, Exh. 8 at ¶ 17.

Washington law holds that Section 187 of the <u>Restatement (Second) of Conflict of Laws</u> (1971) ("<u>Restatement</u>") provides the rule for conflict of laws problems in which the parties have made an express contractual choice of law.  <u>Erwin v. Cotter Health Centers</u>, 161 Wn.2d 676, 694 (2007).  As explained by Washington's Supreme Court, sound policy dictates that contractual choice-of-law provisions usually be honored:

> The <u>Restatement</u>, expounding on core choice-of-law principles, explains that in applying section 187, "protecting the justified expectations of the parties ... come [s] to the fore." <u>Restatement</u> § 6 cmt. c. "Generally speaking, it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state." <u>Id.</u> cmt. g.  Likewise, "[p]redictability and uniformity of result are of particular importance in areas where the parties are likely to give advance thought to the legal consequences of their transactions." <u>Id.</u> cmt. i.

<u>Erwin</u>, 161 Wn.2d at 699.

**a.  <u>Restatement</u> Section 187(2)(b)**

Pursuant to Section 187(2)(b) of the <u>Restatement</u>, however, courts will sometimes make an exception to the general rule applying the parties' chosen law if the application of that would satisfy three factors.  For Section 187(2)(b)'s exception to apply, the application of the parties' chosen law must be:

> (1) contrary to a fundamental policy of a state (2) which has a materially greater interest than the chosen state in the determination of the particular issue and (3) which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

<u>Id.</u> at 696.  Defendants fail to establish these three factors.

The Barketts argue that the loan agreements are contrary to a fundamental policy of California because they are "illegal" under California law.  There are two problems with this reasoning.  First, as explained in <u>Erwin</u>, reasoning that California law should apply because the agreements would be illegal under California law is circular.  <u>Id.</u> at 696 (". . . Cotter assumes his conclusion, that California law applies, as a premise in his argument that applying Washington law is contrary to California

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 4

policy and therefore California law applies.").  Second, defendants have not cited any
applicable California law indicating the loan agreements would be "illegal" and "void"
if construed under California law.  As discussed later in this Order, the California law
cited by defendants is inapposite to the commercial loans at issue here.

As to the second Section 187(2)(b) factor, defendants have not shown that
California has a materially greater interest in this issue than Washington, whose
resident stands to lose millions of dollars to defendants in the absence of a judgment.
See, e.g., Erwin, 161 Wn.2d at 699 ("Finally, Washington has a strong interest in
providing Washington residents . . . with a forum for recovering compensation for
services they render pursuant to contract.").  In fact, it might be argued that California
has an interest in applying the Washington law selected in the agreements.  See id.
("Both California and Washington have interests in protecting the justifiable
expectations of the contracting parties.").

As to the third factor, the Court finds on balance that Washington law would
likely apply under the "most significant relationship" standard enumerated in Section
188 of the Restatement, where:

> [c]ourts weigh the relative importance to the particular issue of (a) the
> place of contracting, (b) the place of negotiation of the contract, (c) the
> place of performance of the contract, (d) the location of the subject
> matter of the contract, and (e) the domicile, residence, or place of
> incorporation of the parties.

McKee v. AT & T Corp., 164 Wn.2d 372, 384-385 (2008).  Contrary to the Barketts'
unsupported assertion that the loans were transacted in California, each of the
Commercial Promissory Notes signed by Mr. Barkett explicitly specifies that the
transactions were "negotiated and consummated in the State of Washington."  Burke
Decl., Exhs. 1, 3, 5 at ¶ 15(c).  WF Capital has no offices or employees in the State of
California.  WF Capital's Washington employees do not travel to the State of
California for purposes of negotiating and/or making loans, and did not do so with
respect to the loans in this case.  See Dkt. #19, Second Declaration of Patrick J. Burke

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 5

("Second Burke Decl.") at ¶ 4. WF Capital's counsel drafted the loan documents in Washington State, and maintains the original execution copies of those documents in Washington State. Id. at ¶ 5. WF Capital funded the loans in this case using funds located in the Washington State, wiring some of those funds to California as necessary, and retaining other funds as a "reserve" account in Washington State. Id. at ¶ 6. On balance, though the Section 188 factors alternately favor either Washington or California, the home state of each party, the Court finds that defendants have failed to show that California has the most significant relationship to the agreements and that California law would apply in the absence of the choice-of-law provisions. Even were defendants able to satisfy this last factor, they do not satisfy the other requisite Section 187(2)(b) factors.

Plaintiff presents multiple agreements freely negotiated between sophisticated parties that all expressly choose Washington law to govern their terms. The parties should have the benefit of their bargain. The "[p]rime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract." Restatement § 187 cmt. e. "These objectives may best be attained in multistate transactions by letting the parties choose the law to govern the validity of the contract and the rights created thereby. In this way, certainty and predictability of result are most likely to be secured." Id. In order to overcome the express choice-of-law provisions in these agreements, defendants would have to satisfy all three Section 187(2)(b) factors. They have satisfied none. The Court applies Washington law.

**2. Analysis Under Washington Law**

Washington's basic law of contracts is not codified and Washington courts rely upon the state's common law in deciding claims in contract disputes and in formulating the law of contracts. Rodgers v. Seattle-First Nat. Bank, 40 Wn. App. 127, 131 (1985). Washington follows the objective theory of contracts, which focuses on the objective manifestations of the agreement. Hearst Communications, Inc. v.

Seattle Times Co. , 154 Wn.2d 493, 504 (2005) ("We do not interpret what was intended to be written but what was written."). This theory imputes to a person an intention corresponding to the reasonable meaning of her words and acts. Santos v. Dean, 96 Wn. App. 849, 854 (1999). Thus, the intent of the parties to a contract is to be determined by examining their objective manifestations, including both written agreements, and the context within which those agreements were executed. Chatterton v. Business Valuation Research, Inc., 90 Wn. App. 150, 155 (1998).

The intent of the parties here, as objectively manifested in the agreements, could not be clearer. As recounted above, defendant William Barkett, on behalf of his marital community, signed three personal Guaranties which "unconditionally, irrevocably, and absolutely guarantees without demand by Lender the full and prompt payment when due" of the loans. Burke Decl., Exhs. 2, 4, 6. After the loans defaulted and defendants failed to perform their duties under the Guaranties, they each signed the Forbearance Agreement, which specifically stipulates, *inter alia*, (1) that the loan documents constitute valid and binding obligations on the parties, (2) that the loans are past due and in default, and (3) that plaintiff is entitled to exercise its rights under the loan documents. Burke Decl., Exh. 8 at ¶¶ 1, 2. The Forbearance Agreement further states:

> Borrower and Guarantors hereby ratify and affirm their obligations under the Loan Documents and this Agreement, including, but not limited to the representations, warranties, and covenants therein, all of which are incorporated herein by reference.

Id. at ¶ 7. And elsewhere, the Forbearance Agreement states:

> Each of Borrower and Guarantors hereby acknowledges and agree that he, she, or it has no defenses, setoffs, or counterclaims based upon any events or transactions occurring, or failing to occur, prior to the date of this Agreement, to the foreclosure of the 9.75MM DOT, 1.15MM DOT, 375M DOT, or PDD DOT, to the payment of the amounts or performance of duties owed under the Loan Documents, or to the exercise by Lender of its other rights and remedies under the Loan Documents. To the extent any of Borrower or Guarantors may have any

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 7

such defenses, setoffs, or counterclaims, each of the Borrower and
Guarantors hereby forever waives, releases, and relinquishes the same.

Id. at ¶ 13.

The Commercial Promissory Notes, Guaranties, and Forbearance Agreement
repeatedly affirm that the defendants are bound by their terms and are now in default.
The Barketts do not deny that they signed these agreements, nor do they deny that the
loans have not been re-paid.  By signing these agreements, the Barketts objectively
manifested their intent to be bound to their terms.  As a matter of law, they have
breached their duties under these agreements, not only by failing to repay the loans but
also by asserting the very defenses they now present.  Because the record shows that
there is no genuine issue as to any material fact and plaintiff is entitled to recovery as a
matter of law, the Court grants plaintiff's motion for summary judgment.

### 3.    Alternative Analysis Under Defendants' Cited California Law

For the sake of completeness, the Court briefly addresses defendants' cited
California law.  Even were California law applied, defendants' arguments are
erroneous.  The Barketts argue that because WF Capital is (1) not registered to transact
business in California and (2) not licensed as a lender in California, the loans and
Guaranties are "illegal" and "void" under California law.

### a.   California Corporate Code § 2105.

The Barketts argue that the loans are "illegal" and "void" because WF Capital
transacted business in California without obtaining a Certificate of Qualification
pursuant to Cal. Corp. Code § 2105.  However, even were the loans construed,
contrarily to their express terms, as transacted in California for the purposes of Cal.
Corp. Code § 2105, defendants cite no authority for the proposition that these loans
would then be "void" and unenforceable simply because plaintiff failed to register.
Under the California Corporate Code, WF Capital's failure to acquire a Certificate of
Qualification before transacting business in California would result only in the
imposition of a nominal fine and preclude it from suing in California State court until

it obtains a Certificate. <u>See</u> Cal. Corp. Code § 2203.

**b.  California Financial Code §§ 22750 and 22324**

Defendants also cite Sections 22750 and 22324 of the California Financial Code for the proposition that the loans are "illegal" and "void" under California law. Though Section 22750 voids certain illegal "consumer loans" and Section 22324 forbids parties to "consumer loans" from contracting out of state in order to avoid the Code, neither section applies to the "commercial loans" at issue here.  Section 22324 is found in Chapter 2 of the Cal. Fin. Code ("Consumer Loans") and Section 22750 is found in Chapter 4, Article 1 of the Cal. Fin. Code ("Consumer Loan Penalties"). Commercial loans, on the other hand, are defined in Chapter 3 of the Cal. Fin. Code ("Commercial Loans"):

> "Commercial loan" means a loan of a principal amount of five thousand dollars ($5,000) or more, or any loan under an open-end credit program, whether secured by either real or personal property, or both, or unsecured, the proceeds of which are intended by the borrower for use primarily for other than personal, family, or household purposes.
>
> For purposes of determining whether a loan is a commercial loan, the lender may rely on any written statement of intended purposes signed by the borrower. The statement may be a separate statement signed by the borrower or may be contained in a loan application or other document signed by the borrower. The lender shall not be required to ascertain that the proceeds of the loan are used in accordance with the statement of intended purposes.

Cal. Fin. Code § 22502.  The penalties relating to commercial loans are contained in Cal. Fin. Code Chapter 4, Article 3 ("Commercial Loan Penalties"), which has no provision similar to Section 22750 that voids loans.

There is no dispute that the loans here are commercial loans.  Each Commercial Promissory Note is signed by the officer of a business entity, is titled "Commercial Promissory Note," and is referred to several times within the Notes as a "Commercial Promissory Note."  <u>See</u> Burke Decl., Exhs. 1, 3, 5.  Further, each Commercial Promissory Note explicitly states that its proceeds will be "used exclusively for

commercial and business purposes only." Burke Decl., Exhs. 1, 3, 5 at ¶15(b).
Sections 22750 and 22324 of the Cal. Fin. Code are therefore inapplicable.

### C. Motion to Dismiss

Defendants' motion to dismiss for lack of personal jurisdiction pursuant to Fed.
R. Civ. P. 12(b)(2) and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is
based on the same erroneous arguments that the agreements are void and
unenforceable under California law.  See, e.g., Motion to Dismiss at 4 ("[Defendants]
do not consent to jurisdiction and apparent consent granted under the agreement is
vitiated by the circumstances of their illegality.").  The Court finds no merit in
defendants' motion.

### 1. Fed. R. Civ. P. 12(b)(2)

It is the plaintiff's burden to establish the court's personal jurisdiction over a
defendant.  Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001).   Further,

> When a district court acts on a defendant's motion to dismiss without
> holding an evidentiary hearing, the plaintiff need make only a prima
> facie showing of jurisdictional facts to withstand the motion to dismiss.
> [ ] That is, the plaintiff need only demonstrate facts that if true would
> support jurisdiction over the defendant.

Id. (citations omitted).  The agreements upon which plaintiff is suing all contain
clauses selecting the federal and state courts of King County, Washington as the
forum.  Burke Decl., Exhs. 1, 3, 5 at ¶ 8; Exhs. 2, 4, 6 at ¶ 13; Ehx. 8 at ¶ 17.  Federal
law governs the validity of a forum selection clause in diversity actions.  Manetti-
Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 513 (9th Cir. 1988).  Forum
selection clauses are prima facie valid "unless the party challenging enforcement of
such a provision can show it is unreasonable under the circumstances."  Argueta v.
Banco Mexicano, S.A., 87 F.3d 320, 324-25 (9th Cir. 1996).

> Absent some evidence submitted by the party opposing enforcement of
> the clause to establish fraud, undue influence, overweening bargaining
> power, or such serious inconvenience in litigating in the selected forum
> so as to deprive that party of a meaningful day in court, the provision

should be respected as the expressed intent of the parties.

Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741 F.2d 273, 280 (9th Cir. 1984). Defendants have made no showing that the forum selection clauses are unreasonable. Instead, they argue that the clauses are not binding because the contracts are "illegal" under California law. As explained elsewhere in this Order, defendants' arguments regarding the loans' illegality are wholly without merit. The Court therefore finds that the forum selection clauses are valid and that defendants consented to jurisdiction by signing the agreements.

Even in the absence of that consent, the Court finds that defendants have sufficient minimum contacts with Washington to support personal jurisdiction. Beyond the reasons set out in pages 5 and 6 of this Order and the surplus of language in the agreements tending to show that defendants should have reasonably anticipated the possibility of defending a suit in Washington, defendants purposely availed themselves of the forum by seeking out three loans from plaintiff, a Washington State entity. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985) ("[W]e have emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to [jurisdiction].").

**2. Fed. R. Civ. P. 12(b)(6)**

In a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the burden falls on the defendant to prove that the complaint fails to state a claim upon which relief can be granted. All allegations of material fact in the complaint are taken as true and are construed in the light most favorable to plaintiff. Oscar v. University Students Co-op. Ass'n, 965 F.2d 783, 785 (9th Cir. 1992); In re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996). However, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Defendants argue that plaintiffs have failed to state a claim because the agreements are void and

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 11

unenforceable.  As discussed previously, this Court finds no merit in this argument.

### III.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is DENIED. Plaintiff's motion for summary judgment is GRANTED.  The Clerk of Court is directed to enter judgment for plaintiff and against defendants.

DATED this 30th day of July, 2010.


*Mrt S Lasnik*
Robert S. Lasnik
United States District Judge